J-S40031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.I.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 140 EDA 2017 |

Appeal from the Order Entered December 6, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000543-2016,
CP-51-DP-0000274-2015, FID 51-FN-000264-2015

BEFORE:   OTT, DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                           **FILED JULY 25, 2017**

L.T. ("Father") appeals from the decree entered on December 6, 2016, in the Court of Common Pleas of Philadelphia County, that involuntarily terminated his parental rights to his daughter, K.I.T. ("Child"), born in May of 2013.[1, 2]  Upon careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decrees entered on December 6, 2016, the trial court involuntarily terminated the parental rights of A.R. ("Mother") and the unknown father.  Neither Mother nor any unknown father filed a notice of appeal from the respective decree.

[2] The trial court also issued a goal change order dated and entered on December 6, 2016, to which Father filed a notice of appeal.  We conclude that Father's appeal from the goal change order is waived because he has not asserted any error regarding it in his concise statement of errors
*(Footnote Continued Next Page)*

It is undisputed that Child was removed from both Father and Mother when she was approximately one and a half years old. N.T., 12/6/16, at 10. Child is diagnosed with macrocephaly, and she suffers from a seizure disorder. Trial Court Opinion, 2/8/17, at 2 (unpaginated); N.T., 12/6/16, at 25. Child has a history of developmental delays involving her speech and motor skills. Trial Court Opinion, 2/8/17, at 2; N.T., 12/6/16, at 21. In addition, Child has an Individualized Education Plan ("IEP"). N.T., 12/6/16, at 22. On January 5, 2015, the Philadelphia Department of Human Services ("DHS") received a report that Child was not attending her medical appointments. Trial Court Opinion, 2/8/17, at 2. Following an evidentiary hearing, the trial court adjudicated Child dependent on February 13, 2015, and placed her in foster care.

DHS required that Father satisfy the following Single Case Plan ("SCP") objectives in order to be reunified with Child: obtain a drug and alcohol assessment from the Clinical Evaluation Unit ("CEU"); provide five random drug screens; obtain suitable housing; participate in the Achieving

_(Footnote Continued)_ ──────────────

complained of on appeal or in the statement of questions involved in his brief. **See Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, Pa.R.A.P. 2116(a), and any issue not raised in a statement of [errors] complained of on appeal is deemed waived") (citations omitted).

Reunification Center ("ARC") for parenting classes and housing assistance; and participate in visitation with Child. N.T., 12/6/16, at 14.

On June 13, 2016, DHS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing occurred on December 6, 2016, during which DHS presented the testimony of Yvonne Vizcarrondo, the Community Umbrella Agency ("CUA") caseworker for this family since March 22, 2016. The Child Advocate, Donna Wren, Esquire, also questioned Ms. Vizcarrondo, as did Father's counsel. The Child Advocate then called Father as on cross-examination. Father subsequently testified on his own behalf on direct examination. At the conclusion of the testimonial evidence, counsel for DHS and the Child Advocate made closing arguments on the record and in open court in support of the involuntary termination of Father's parental rights. *See* N.T., 12/6/16, 51-55.

By decree dated and entered on December 6, 2016, the trial court granted DHS's petition for the involuntary termination of Father's parental rights.[3] Father timely filed a notice of appeal and a concise statement of

---

[3] The Child Advocate has filed an appellee brief in support of the subject decree. We are cognizant of *In re Adoption of L.B.M.*, 2017 Pa. LEXIS 1150 (Pa. March 28, 2017), wherein our Supreme Court held that 23 Pa.C.S.A. § 2313(a) requires the trial court to appoint counsel for a child in a contested involuntary termination proceeding, and that the failure to do so constitutes structural error, which can never be harmless in nature. A plurality of the Court held that the appointment of a guardian *ad litem* who
*(Footnote Continued Next Page)*

- 3 -

errors complained of on appeal pursuant to Pennsylvania Rules of Appellate Procedure 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on February 8, 2017.

On appeal, Father presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father . . . pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) where [F]ather presented evidence that he made significant efforts to perform his parental duties, obtained employment, completed parenting classes and drug and alcohol treatment and visited his daughter consistently while in care[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father . . . pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) where Father presented evidence that he made significant efforts to remedy any incapacity or neglect by obtaining employment, completing parenting classes and drug and alcohol treatment and visiting his daughter consistently while in care[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father . . . pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) where evidence was provided to establish that the child was removed from the care of the parents, however Father is currently capable of caring for the

*(Footnote Continued)* _____

is a licensed attorney does not satisfy this mandate. Four justices disagreed and opined in concurring and dissenting opinions that separate representation would be required only if a child's best interests and legal interests conflicted.

In this case, Father does not assert that the Child Advocate, a licensed attorney, failed to represent Child's legal interests pursuant to Section 2313(a). To the extent the Child Advocate represented both the legal and best interests of the Child, we deem those interests not in conflict. Indeed, Child was approximately three and one-half years old at the time of the subject proceedings. Therefore, Child lacked the capacity to articulate her preference regarding the involuntary termination of Father's parental rights.

- 4 -

child and the conditions which led to removal have been remedied[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father . . . pursuant to 23 Pa.C.S.A. [§] 2511(a)(8) where evidence was presented to show that Father is currently capable of caring for the child and the conditions which led to removal have been remedied[?]

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father . . . pursuant to 23 Pa.C.S.A. [§] 2511(b) where evidence was presented that clearly established that Father has a parental bond with the child that would be detrimental to sever[?]

Father's brief at 7.

We consider Father's issues according to the following standard.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record supports the decree pursuant to Section 2511(a)(2) and (b), which provides as follows.[4]

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

---

[4] Based on this disposition, we need not consider Father's issues with respect to Section 2511(a)(1), (5), and (8).

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

This Court has stated as follows.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). Further, we have stated, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in

the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

On appeal, Father asserts that his conduct does not warrant termination under Section 2511(a)(2) because he "has the present capacity to care for this child and has addressed all of the concerns that brought this child into foster care." Father's brief at 17. Upon review, the testimonial evidence belies Father's assertions.

In its Rule 1925(a) opinion, the trial court found that "medical neglect of the Child by the Father was one of the main reasons the Child was committed." Trial Court Opinion, 2/8/17, at 5 (citation to record omitted). Further, the court found that "Father had not attended the Child's medical appointments. At the hearing, Father testified that he did not know his Child's diagnosis; that he had attended **one** medical appointment, and that he did not know what medications the Child was prescribed." *Id.* at 6

(citations to record omitted) (emphasis in original). The testimonial evidence supports the court's findings.

Ms. Vizcarrondo testified that she as well as Child's foster mother informed Father by telephone call and text message of Child's scheduled medical appointments. N.T., 12/6/16, at 22, 32. Ms. Vizcarrondo testified that Father has not attended any of the appointments during the nearly nine months she has been the CUA caseworker for this family. *Id.* at 17-18, 22, 25. In addition, Ms. Vizcarrondo testified that Child's parents were notified about the initial IEP meeting that occurred on September 22, 2016. *Id.* at 22-23, 26, 32. On cross-examination by Father's counsel, Ms. Vizcarrondo testified that Father "told me he would be available" to attend the IEP meeting. *Id.* at 32-33. However, Father did not attend. *Id.* at 26, 33. Further, she testified that Child's parents were notified with respect to a conference on October 5th involving Child,[5] the exact subject of which is unspecified in the record, and Father did not attend. *Id.* at 26-27.

Father testified that he does not know Child's diagnosis, but that he is aware she is on "seizure medication." *Id.* at 36. Father testified that he attended Child's medical appointment "for her . . . head scan." *Id.* Father testified that he has been invited to attend Child's recent medical

---

[5] Although the year is unspecified, we presume this conference regarding Child occurred on October 5, 2016.

appointments, and, for one of them, he "wasn't able to leave work."[6] *Id.* at 36, 44. With respect to the IEP meeting, Father testified that he was not notified about it. *Id.* at 36, 44. To the extent the trial court made credibility determinations in favor of Ms. Vizcarrondo and against Father with respect to his notification of Child's medical appointments and the IEP meeting, we discern no abuse of discretion. *See In re T.S.M.*, *supra*.

In addition, the trial court found that Father "did not have permanent housing and that he lived in a rooming house." Trial Court Opinion, 2/8/17, at 6 (citation to record omitted). Father testified that he had moved "last week" to a "rooming house," owned by his friend. N.T., 12/6/16, at 37-38. He acknowledged that his housing is not appropriate for Child. *Id.* at 38. In addition, Ms. Vizcarrondo testified that Father does not have appropriate housing for Child. *Id.* at 18. She testified that Father did not complete the program offered by ARC for housing assistance, and that he has not provided documentation to show he is currently trying to obtain appropriate housing. *Id.* at 18-19.

Finally, the record reveals that Father was convicted of criminal charges involving manufacturing, delivery, and possession of illegal drugs in 2010, 2011, and 2012. N.T., 12/6/16, at 5-6; DHS Exhibit 3. Father remained on parole during the underlying dependency case, which was a

---

[6] Father testified he became employed full-time in May of 2016. N.T., 12/6/16, at 43.

total of nearly 22 months by the time of the subject proceedings.[7] Pursuant to his SCP objectives, the trial court ordered Father on five separate occasions to obtain a drug and alcohol assessment at the CEU, but he never complied. *Id.* at 14-15. Further, Father refused to participate in two of the five random drug screens required by his SCP objectives. *Id.* at 15-16. We observe that Ms. Vizcarrondo testified on cross-examination by Father's counsel:

Q. [A]ll of his drug screens that have been given here at Family Court have been negative, is that correct?

A. For the most part, yes.

*Id.* at 33. Upon review, there is no record evidence that Father tested positive for illegal drugs during the underlying dependency matter.

Based on the foregoing testimonial evidence, we discern no abuse of discretion by the trial court in concluding that Father's conduct demonstrates repeated and continued incapacity, neglect, or refusal in attending Child's medical appointments and IEP meetings; obtaining appropriate housing; and in complying with his SCP objectives involving the drug and alcohol assessment and random drug screens. Father's conduct in this regard has

---

[7] Father testified that he was incarcerated at the time of Child's birth. N.T., 12/6/16, at 45. Father's counsel represented to the trial court on the record in open court that he was released from prison in December of 2014. *Id.* at 34. Father was re-incarcerated in September of 2015, and he was released in January of 2016. *Id.* Father's counsel stated to the trial court, "he was released in January because those . . . charges were dropped." *Id.*

caused Child to be without essential parental care, control, or subsistence necessary for her physical or mental well-being. Further, the causes of Father's incapacity, neglect, or refusal cannot or will not be remedied. Thus, Father's argument with respect to Section 2511(a)(2) fails.

With respect to Section 2511(b), Father argues that terminating his parental rights would cause Child irreparable harm. Specifically, Father asserts that he has consistently attended his weekly supervised visits with Child, and that they share a parent-child bond.

Our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, *supra* at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Instantly, there is no dispute that Father attended his weekly supervised visits, and that his interaction was appropriate during the visits. N.T., 12/6/16, at 19, 31. Ms. Vizcarrondo testified that Child calls Father "Dad." *Id.* at 31. However, Ms. Vizcarrondo testified that Child's primary

parent-child bond is with her foster mother, a pre-adoptive resource, with whom she has resided during her entire 22 months of dependency. *Id.* at 20, 23.

Further, Ms. Vizcarrondo testified that the foster mother attends Child's medical appointments, and that she is involved with meeting Child's educational needs, including, but not limited to, attending Child's IEP meetings. *Id.* at 21-22. Ms. Vizcarrondo testified as follows on cross-examination by the Child Advocate:

Q. [H]as [Child] made progress while in the care of [foster mother]?

A. Very much so.

*Id.* at 23-24. As such, Ms. Vizcarrondo testified that terminating Father's parental rights will not cause Child irreparable harm. *Id.* at 23.

Based on the totality of the record evidence, we discern no abuse of discretion by the trial court in concluding that terminating Father's parental rights will serve Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b). Accordingly, we affirm the decree.

Decree affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/2017